Matter of the Estate of JOSE ZAYAS Y USATORRES,
Deceased.

(Surrogate's Court, New York County, June, 1920.)

**Domicile — wills — transfer tax — citizens.**

> The evidence taken in a transfer tax proceeding upon the question of the domicile of decedent at the time of his death, who though born in Cuba beame a naturalized citizen of the United States in 1871, considered, and *held*, that though he died in Cuba his last domicile was in the state of New York.

APPLICATION to determine domicile of decedent.

Olcott, Mestre & Gonzalez (Antonio C. Gonzalez, Jr., and Alexander Otis, of counsel), for executor.

Lafayette B. Gleason (John B. Gleason, of counsel), for state comptroller.

COHALAN, S.   This is an application to determine the question of the domicile of the decedent on the testimony taken before the transfer tax appraiser, which, pursuant to the stipulation of the parties, is submitted to the court.

The decedent was born in Cuba in the year 1837. He came to the United States in 1852 and was naturalized as a citizen in the Court of Common Pleas in the county of New York in 1871. A few years prior to the latter date he engaged in business in South America. His son testified that from that time until the year 1914 the decedent considered England as his residence, spending his winters in Cuba, although his wife and children continued to reside in New York. His two

children were educated in this country and have lived here practically all their lives. His wife died in 1911 and was buried in a cemetery in Brooklyn.

In the early part of 1914 the decedent went to Cuba, and while there executed a deed of trust to the Union Trust Company of New York, describing himself as a resident of Camaguey, Cuba. On July first, of the same year, he arrived in this city. Eight days later he made his will in which he described himself to be " a native of Camaguey, formerly Puerto Principe, Republic of Cuba, a citizen of the United States of America, freeholder, domiciled in and a resident of the Borough of Manhattan, City of New York, in the County and State of New York." He returned to Cuba in November. The following year on entering the port of New York he signed a baggage declaration in which he stated that he resided at No. 16 East Sixtieth street, in this city, the address of an apartment hotel in which his son Octavio resided. In January, 1915, the decedent came to this city, lived in the same apartment hotel with his son for a time, went to the Adirondacks, where he was a charter member of a club, spent part of the time in New Hampshire and Canada, returning to this city about September first and sailing for Cuba in the latter part of October. In the years 1916, 1917 and 1918, the time of the decedent was divided between Cuba and the United States to the same relative extent as in 1915. The baggage declaration on his trip from Cuba to New York in 1916 stated his residence to be at No. 14 East Sixtieth street. In April, 1917, in coming to this city from Cuba, he stated in his baggage declaration that he was a resident of Havana. In September of the same year, he applied for a United States passport to Cuba, declaring in his application that he was a resident of Camaguey, and domiciled in Cuba. He registered as

from New York at the hotels in Atlantic City, N. J., and Lenox, Mass., where he stopped in the summers of 1917 and 1918. His baggage declaration on his entry to this port in May, 1918, gave his residence at the apartment hotel at East Sixtieth street, this city. He left New York on October 31, 1918, and died in Cuba, January 8, 1919.

The decedent had no commercial interests whatever in Cuba and had no near relatives there in the last few years of his life. He had retired from business in 1895, and at his death, in his eighty-second year, the value of his investments, which were typically those of a resident of the United States, was about $630,000. He had a cash balance with a trust company of this city of nearly $22,000, and an account with a New York brokerage firm, of which one of his sons was a member, of over $38,000.

In his will above referred to he gives his entire residuary estate to his son Octavio, mentioning the fact that he had previously made provision for his other son, Hector, by the trust deed of March 23, 1914, whereby the latter was to receive the income of $100,000 for life, with power of appointment over twenty per cent of the remainder, the balance of which was to be paid to the son Octavio or his heirs.

It appears from the record herein that by the laws of Cuba a decedent is limited in the disposition of his estate by will to one-third thereof where children survive and that they become heirs by force of law of two-thirds of his estate. The bequest by decedent to one of his sons of the entire residuary estate would therefore be invalid under the Cuban law.

In the brief of counsel for the executor it is suggested in explanation of the custom of decedent of spending a portion of each year in New York, that the court might almost take judicial notice of the fact that

Appellate Term, First Department, June, 1920.    [Vol. 112.

in Cuba the weather during this period is oppressive. If this fact were conceded, the argument would have no force because it would then be contended that decedent made his annual sojourn in Cuba for the sole purpose of escaping the rigors of the northern winter. The record in this case would support the latter contention.

There is no doubt in my mind that the domicile of the decedent was in this state. The report of the appraiser will be remitted to him for the purpose of appraising the estate of decedent accordingly.

Decreed accordingly.